UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAI ALKEBU-LAN,<br><br>    Plaintiff,<br><br>  vs.<br><br>K. WEAVER,<br><br>    Defendant. | No. 2:01-cv-02286-JKS(PC)<br><br>MEMORANDUM DECISION<br>and ORDER<br>[Re: Motions at Docket Nos. 119 and 130] |

I.  MOTIONS PRESENTED

At Docket No. 119 Plaintiff Shai Alkebu-Lan ( "Alkebu-Lan") filed his motion for summary judgment.  At Docket No. 127 Defendant K. Weaver ("Weaver") filed his opposition to the motion, to which Plaintiff has not replied.  At Docket No. 130 Defendant filed a cross-motion for summary judgment.  At Docket No. 132 Alkebu-Lan filed his opposition to the cross motion, to which Weaver has not replied.  Neither party has requested oral argument and the Court has determined that oral argument would not assist in deciding the motions.[1]

II.  BACKGROUND

Alkebu-Lan filed his complaint in November 15, 2001, in the Northern District of California.  The action was transferred to the Eastern District of California on December 13, 2001.  The Court screened Alkebu-Lan's complaint under the authority found in 28 U.S.C. § 1915A(a) and concluded that it was deficient.  The complaint was dismissed without prejudice and Alkebu-Lan was directed to file a timely amended complaint. Docket No. 2.  Alkebu-Lan filed his amended complaint on February 1, 2002. Docket No. 4.  The complaint was screened a

---

[1] The Court notes that it may not grant summary judgment against a *pro se* party unless the pro se party has been provided fair notice of the summary judgment rule.  *Rand v. Rowland*, 154 F.3d 952, 958–59 (9th Cir.1998).  The Court provided such notice in its Standing Order entered June 16, 2003, at Docket No. 53.

second time and this time found to state a claim as against defendant K. Weaver only. The Court therefore provided for the service of the complaint and summons on K. Weaver only.

In his amended complaint Alkebu-Lan asserts two claims.  First, that Weaver intercepted and delayed his mail depriving him of timely access to the courts.  Second, that Weaver was part of a conspiracy to inflict physical and psychological torture on Alkebu-Lan, and prepare false documents to force Alkebu-Lan to withdraw his appeals and petitions.

### III.  ISSUES PRESENTED

1. Whether the acts of Weaver in 2001 denied Alkebu-Lan access to the courts?
2. Whether the acts of Weaver in 1999–2000 constituted cruel and unusual punishment and denied Alkebu-Lan access to the courts?

### IV.  STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving party is entitled to judgment in its favor as a matter of law.  FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir.1989).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir.2002).  A verified complaint serves as an affidavit for summary judgment purposes.  *Lopez v. Smith*, 203 F.3d at 1132 n. 14.  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In general, in ruling on a motion for summary judgment, a court may not weigh the evidence or judge the credibility of witnesses. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir.2005). Instead, the court generally accepts as true statements made under oath. *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir.2005); *See Williams v. Calderon,* 48 F.Supp.2d 979, 989 (C.D. Cal.1998) (noting in the context of a habeas claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford,* 384 F.3d 567 (9th Cir.2004). However, this rule does not apply to conclusory statements unsupported by underlying facts, *Walker v. Sumner*, 917 F.2d 382, 387 (9th Cir.1990), nor may the court draw unreasonable inferences from the evidence. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *McLaughlin v. Liu*, 849 F.2d 1205, 1207–1209 (9th Cir.1988).

## V.  DISCUSSION

Initially the Court notes that, except for his verified Amended Complaint, Alkebu-Lan has submitted little, if any, admissible evidence in support of either his motion for summary judgment or his opposition to Weaver's cross-motion.[2/] Moreover, Alkebu-Lan has not controverted Weaver's Statement of Undisputed Facts.

A.    *Access to the Courts*.

In support of his allegation that Weaver interfered with his access to the courts, Alkebu-Lan alleged in his verified complaint:

> Correctional Officer Weaver subverted and circumvented plaintiff's a) Supreme Court of California's habeas claims, causing his petition to be late and denied from filing deadline, b) officer Weaver admitted on June 2nd and ninth that he copied, intercepted and forwarded plaintiff's confidential legal mail to attorneys and the courts to authorities (i.e. Attorney General Bill Lockyer, LAPD Detectives and prison psychologist) to hinder his investigation, c) on June 26th in a meeting with appeals Lt. Schirmer, Weaver had copies of every exhibit, habeas corpus and petition sent to the courts for a two year period.

\* \* \* \*

---

[2/] The "Preliminary Statement Pursuant to Local Rule 16-281" submitted in opposition to Weaver's motion is neither an affidavit executed before a notary nor a sworn declaration under 28 U.S.C. § 1746.

   Furthermore, Weaver's actions denied plaintiff a "reasonable and adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" as well as access to legal assistance necessary.

  The Court starts with the proposition that the right of access to the courts is a well established fundamental constitutional right. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977). It is, however, also well established that there must be some injury and that requirement is not satisfied by just any type of frustrated legal claim. *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Access to the courts in the Constitutional context is the opportunity to prepare, serve, and file such pleadings and documents necessary or appropriate to commence or prosecute court proceedings affecting one's personal liberty. *Id*. at 384 (Thomas, J. concurring); *Philips v. Hust*, 477 F.3d 1070, 1075–76 (9th Cir.2007); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1159–60 (9th Cir.2003). Access to court claims are of two types—a forward-looking claim, *i.e.*, one in which the action seeks to remove impediments or road blocks to future litigation, and a backward-looking claim, *i.e.*, one in which specific litigation ended poorly, or could not have commenced, or could have produced a result subsequently unobtainable. *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). This case presents a backward-looking claim. Irrespective of whether the claim is forward- or backward-looking, the underlying cause of action, whether anticipated or, as in this case, lost, as well as the official actions frustrating the litigation, and, in cases of lost remedies, the remedy lost, must be described in the complaint and proven. *Id*., at 415–16.

  Here, the sole allegation that even remotely satisfies the pleading requirement is that Weaver caused Alkebu-Lan's California Supreme Court habeas claims to be filed late and, because of the late filing, denied. This wholly conclusory allegation is unsupported by any admissible evidence in the record. The docket information for the California Supreme Court shows Alkebu-Lan filed three habeas petitions in that court.[3/] Only one was filed prior to commencement of this lawsuit; a petition filed April 16, 2001, Case No. S096855, which was

---

[3/] California Appellate Courts Case Information, Supreme Court, accessible online at http://appellatecases.courtinfo.ca.gov/. The Court takes judicial notice of this information. FED. R. EVID. 201.

summarily denied September 26, 2001, without comment or citation. Two subsequent petitions were filed: February 26, 2002, Case No. S104645, denied August 21, 2002 with citations; and April 8, 2005, Case No. 1330734, denied March 29, 2006, also with citations.[4]

The habeas petition filed in the California Supreme Court in 2001 was denied without citation or comment. Such "postcard" denials are treated as being decisions on the merits except where a citation in the order indicates otherwise. *See Harris v. Superior Court of the State of Cal., Los Angeles County*, 500 F.2d 1124, 1128–29 (9th Cir.1974 (en banc); *In re Clark*, 855 P.2d 729, 769 n. 9 (Cal.1993) ("The denial of a habeas corpus petition without issuance of an order to show cause, often referred to as a 'summary denial,' does not mean that the court has not considered the merits of the claims. Unless a procedural bar is apparent, the court will determine whether the petition states a prima facie case for relief, i.e., whether it states facts which, if true, entitle the petitioner to relief."). On the other hand, a habeas petition denied by citation to *In re Clark*, (1993) 5 Cal.4th 750, as were the 2002 and 2006 petitions, signifies that the petition was denied because it was untimely filed. *In re Robbins*, 959 P.2d 311, 340 n. 34 (Cal.1998). Applying these rules interpreting "postcard" decisions of the California Supreme, the Court, in the absence of contrary evidence, presumes that the 2001 habeas petition filed in the California Supreme Court was denied on the merits, not because it was untimely. Alkebu-Lan has provided no such contrary evidence to rebut this presumption.

Alkebu-Lan's conclusory allegation that Weaver interfered with Alkebu-Lan's access to the courts is not only unsupported by evidence but eviscerated. Accordingly, Weaver is entitled to judgment as matter of law on the claim that Weaver denied Alkebu-Lan access to the courts.[5]

/

/

/

---

[4] Citing *In re Clark* (1993) 5 Cal.4th 750; *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Miller* (1941) 17 Cal.2d 734.

[5] Although Alkebu-Lan refers to these communications as being confidential, Alkebu-Lan does not identify any particular document that would have been confidential and not part of the public record. Albetu-Lan's conclusory allegation that Weaver interfered with his access to necessary legal assistance is likewise devoid of any indication in the record that he was communicating with an attorney.

B. *Infliction of Cruel and Unusual Punishment/Access to the Courts*.

This is a hybrid claim, a cruel and unusual punishment claim mixed with a claim that the cruel and unusual punishment was intended to and did interfere with Alkebu-Lan's access to the courts. In support of this claim, Alkebu-Lan states (case citations omitted):

> Since June of 1999, Officer Weaver, Sgt. K. Holm, and Captain Briddle et. al have participated in a series of cruel and unusual punishment directed against Plaintiff resulting in "the infliction of pain" which was "unnecessary and wanton" based "totally without penological justification" as Plaintiff is disciplinary free.
>
> Upon Correctional Officer Weaver interfering with Plaintiff's legal and confidential legal mail, Weaver discovered that several members of his AMERIKKKA and California State government's Y2K – Internal Criminal Justice Conspiracy Organized Crime Ring were implicated in the LAPD–Rampart scandal and under investigation from falsely imprisoning and conspiring to convict Plaintiff, Shai Alkebu-Lan.
>
> Further Officer Weaver et. al. participated in the systematic physical and psychological torture of Plaintiff, Shai Alkebu-Lan by closing his hand in an electric door, denying Plaintiff medication for twelve (12) days, in June of 1999 (see filed CDC 602 HOSP-D-99-02011).
>
> As Plaintiff's investigation escalated, exposing LAPD detectives Yvonne Moreno, Daniel Nee, and Scott Smith et. al., causing a federal investigation into the LAPD–Rampart scandal, Weaver's torture escalated to food poisoning. On 12-31-1999 Alkebu-Lan was rushed to the MTA for heart, chest and shoulder pains from Weaver's attempt to kill Plaintiff, and stop Plaintiff's "right of access to the courts"  Within three months Alkebu-Lan was moved to the B-Facility, and Weaver followed.
>
> Weaver continued to terrorize Plaintiff and came to his cell, physically and by force wrestling Plaintiff out of his cell to extract information from Plaintiff's case. Weaver brandished his fist at Plaintiff, asserting he, Weaver, would slide the CDC 128b, enemy chrono into Plaintiff's C-file, forward his legal mail to the Attorney general Bill Lockyer, LAPD officers, AMERIKKKA prison officers at High Desert State Prison, and lastly to the prison psychologist, Dr. Otasinaski whom showed Plaintiff (10) copies of Exhibits that were not sent to the federal courts for Plaintiff federal habeas claims in which inmate was "actually denied access to the courts." Thus this resulted in irreparable injury as Plaintiff's cellmate, inmate Clemmons CDC # C-53431 witnessed the harassment as well as inmate Brown, who both saw Weaver hand Plaintiff a false CDC 128-b enemy chrono saying "this is in your C-file, continue with this appeal," Weaver then wrote on the back of the CDC 128 Form "AMERIKKKA" he handed to plaintiff and said "we're on the yard and can take care of you and kill you is you

>pursue this appeal." These terrorist threats were "unnecessary and wanton" based "totally without penological justification."
>
>Plaintiff was immediately transferred to Ironwood State Prison for fear for his life.
>
>Furthermore, Officer Weaver, Sgt. K. Holm and Captain Briddle falsified the CDC to hinder Plaintiff's complaints to the courts, his transfer, disciplinary free record and cruel and unusual punishment against Petitioner, forbidden under the Eighth Amendment of the United States Constitution.

Turning first to the claim to the extent that it seeks relief based upon the theory that Weaver's actions denied him access to the courts. As noted above, in order to prevail Alkebu-Lan must plead and prove the underlying cause of action lost, the official actions frustrating the litigation, and the remedy lost. *Christopher v. Harbury*, 536 U.S. at 415–16. At most, the evidence adduced by Alkebu-Lan establishes that the acts of Weaver were intended to deny him access to the courts; it does not establish that this end was actually accomplished. Alkebu-Lan has not identified either the underlying cause of action or remedy that was lost as a result of the acts of Weaver. His most telling allegation is that the psychologist, Dr. Otasinaski, showed him (10) copies of exhibits that had not been sent to the federal courts in connection with his federal habeas claim. However, Alkebtu-Lan does not describe what those exhibits consisted of or how their omission adversely affected the outcome of the federal habeas proceedings.

Accordingly, Alkebu-Lan's wholly conclusory statements concerning a denial of access to the courts is not only unsupported by the evidence, the evidence refutes it. Weaver is entitled to judgment in his favor on the second claim to the extent that it alleges a denial of access to the courts.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, the conditions of confinement must involve the wanton and unnecessary infliction of pain, be devoid of legitimate penological purpose, or be contrary to the standards of decency that mark the progress of a maturing society. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir.2006). In general, to establish an Eighth Amendment cruel and unusual punishment claim, a prisoner must allege and prove unnecessary and wanton infliction of pain. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986). The question of whether the actions taken inflicted unnecessary or wanton pain and

suffering ultimately turns on the question of whether the acts causing the pain and suffering were undertaken in a good faith effort to further a legitimate penological interest or maliciously and sadistically for the very purpose of causing harm.  *Id*., at 320–21; *Jeffers v. Gomez*, 267 F.3d 895, 910–11 (9th Cir.2001).

The cruel and unusual allegations are for the most part wholly conclusory and do not describe precisely what Weaver did or when he did it.  The three exceptions to this deficiency are: (1) participation in the alleged closing of the electric cell door on his hand in June 1999; (2) food poisoning in December 1999; and (3) force wrestling Alkebu-Lan out of his cell to extract information from Alkebu-Lan's case.

With respect to the cell-wrestling incident, Alkebu-Lan does not allege that he suffered any injury at all, let alone that the actions of Weaver inflicted unnecessary and wanton pain and suffering upon him.  While significant injury is not required to make out an excessive force claim, the absence of serious injury is relevant to the inquiry and a *de minimis* use of physical force does not violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 7, 9–10 (1992). The cell-wrestling incident falls within this category.  However, the other two incidents, if they, in fact, occurred, clearly could not have been undertaken in a good faith effort to further a legitimate penological purpose but were maliciously and sadistically done for the very purpose of causing harm.

Although not entirely clear from the record, these allegations appear to be based upon a theory that Weaver was part of a conspiracy to cover up or impede Alkebu-Lan's investigation into exposing LAPD detectives and instigating a federal investigation into an unidentified LAPD–Rampart scandal and/or preventing Alkebu-Lan from pursuing his complaint against LAPD–Rampart detectives for falsely convicting him.[6/]  To prove a conspiracy under § 1983, Alkebu-Lan must show an agreement or meeting of the minds to violate his constitutional rights. *Hart v. Parks*, 450 F.3d 1059, 1069 Cir.2006); *Franklin v. Fox*, 312 F.3d 423, 441 (9th

---

[6/] The basis for the false conviction allegation is a complete mystery.  In his deposition Alkebu-Lan admitted that he beat up the victim and he was convicted after a jury trial in which there is no indication in the record that any LAPD–Rampart detective had any role.

Cir.2002).   Alkebu-Lan has completely failed to provide any evidence to support his conclusory allegation of a conspiracy.[7/]

That Weaver somehow directly participated in the closing of the door incident is undercut by the document that Alkebu-Lan attached to his complaint and refers to: CDC 602 HOSP-D-99-02011.  In that document, Alkebu-Lan stated: "I was advised to go to classification, while reaching for my identification, Correctional Officer Campbell caught my fingers (ie. left middle and ring fingers) in the door of cell 204."  Nowhere in that CDC is there any mention of Weaver.  In his Declaration filed in support of his motion for summary judgment, Weaver states:

> 9.  I understand that Alkebu-Lan alleges in the amended complaint that in June 1999 I was escorting him to his cell to retrieve his identification card when he reached back into his cell  and his hand was injured by the cell door.  I have examined a printout of Alkebu-Lan's cell assignments and he was assigned to D-Facility in June 1999. (Attachment 2)  I was assigned to  B-Facility.  Although I worked occasional overtime shifts in other facilities, I have never escorted  an inmate whose hand was injured by a cell door.
>
> 10.  The doors in D-Facility are opened and closed by the control officer.  They are not designed to be opened or closed by hand. Although the doors can be moved by hand, it takes a large amount of force to move them.

Alkebu-Lan does not dispute these facts in his opposition.  Nor does Alkebu-Lan advance any theory, other than his unproven conspiracy theory, to implicate Weaver.  The evidence in the record simply does not support his allegation that Weaver was involved in the door closing incident in which Alkebu-Lan's finger was injured.

When questioned in his deposition about the poisoning allegation, Alkebu-Lan testified:

> So what happened was from December the 15th to the 30th we had noticed there was some white stuff at the bottom of the food.  And they served us like beans every couple days. So my celllie asked me, he said, "Hey, look you going to eat those beans?"  I said, "No, you can have them 'cause I'm tired of beans.  They giving me gas."  So we're start laughing. So I scraped my beans in my plate. At the bottom of the beans there was a big lump of white powder.  That's not how you make beans with any powder, and I noticed that from the 15th to the 30th there was this powder in the food.  It was either -- it was always under the beans, but I never ate the beans, and I never gave it to my cellie but that day December

---

[7/] The evidence on this issue in the record is Weaver's unrefuted declaration that he does not know any detectives in the LAPD Rampart Division.

> 30th, they gave us beans that day.  So I scraped it in his plate and I licked my spoon with the white powder and he ate the serving of the beans. The next morning my whole side just went out.  I couldn't move it at all, and my cellie was laying on the bed, and he couldn't move.  I got off the bunk.  I couldn't breathe.  I said, "Hey, man."  I said, "Hey, pleasant [*sic*] pops."  His name is Keith Michael, there's even CDC 7083, he's a witness he couldn't move.  He was going like this. His right side had gone out and he wasn't saying anything to me and he did say something to me. "Look, I am going to make these people take me to medical."  I couldn't move my side.  I thought I was having a stroke.  Finally they come but they didn't want to take us.  I said, "Look, you got to take me.  This is an emergency. My whole side is gone out.  I think I'm having a heart attack.  My cellie Pleasant, he still hadn't gotten up.  They took me to medical, "Oh, man, that's nothing. You just got gas and stuff," such and such and such and such, and I said, "Man, look, man, you put something in the food and you've been doing it for awhile. You need to talk to your floor officers about that."  So and so and so an so and so and such and such and such and such, and I get back, Pleasant goes to medical.  The next thing you know several people on the whole tier, upper tier and the three other sections to our building they had been suffering from the same thing and so -- all of them had been people doing legal work, filing 602s.  The old Italian Jerry, two other African Americans, a few Southern Mexicans and a couple Northern Mexicans some other white and Asian inmates, everybody who were litigators they had all been -- all been suffering from the same ailment.

Alkebu-Lan's  medical chrono for December 31, 1999, in which the symptoms described are that his chest hurts and left arm is tingling, indicates the diagnosis was deferred.

Weaver states in his declaration:

> 11.  I understand that Alkebu-Lan alleges in the amended complaint that on December 31, 1999, I poisoned his food, which caused heart pain and numbness in his arm.  Alkebu-Lan's records indicate that he was housed in D-Facility in December 1999.  I was assigned to B Facility.  I did not poison him, or put any substance into his food.

Alkebu-Lan has the burden of producing some significant probative evidence supporting his complaint. *Anderson v. Liberty Lobby, Inc.*, 391 U.S. at 290.  Alkebu-Lan provides no direct evidence in opposition to Weaver's direct evidence in his declaration that he did not poison Alkebu-Lan.  Instead, Alkebu-Lan continues to rely on his conclusory allegation.  In order to find in favor of Alkebu-Lan, the Court must find that a trier of fact would infer from the circumstantial evidence in the record that Weaver poisoned him.  This the Court cannot do. While, under *Anderson*, the Court must accept as true the non-movant's direct evidence, the

same is not true of circumstantial evidence.  In that case, the Court must find that the inference to be drawn from the underlying facts is rational or reasonable.  *McLaughlin*, 849 F.2d at 1208–09; *T. W. Elec. Serv. Pacific Elec. Contractor's Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 254–55.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non- moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 575 U.S. at 587.  In viewing all the evidence adduced by Alkebu-Lan in the light most favorable to him, it would be implausible for any rational trier of fact to infer that Weaver attempted to poison him.

There being no genuine triable issue fact that Weaver subjected Alkebu-Lan to cruel and unusual punishment, Weaver is entitled to judgment in his favor on that claim as a matter of law.

## VI.  CONCLUSION and ORDER

Based upon the forgoing, the motion by plaintiff Shai Alkebu-Lan for summary judgment at Docket No. 119 is DENIED; and the cross-motion of defendant K. Weaver at Docket No. 130 is GRANTED.

IT IS ORDERED THAT the complaint on file herein is dismissed, with prejudice, plaintiff to take nothing by way thereof, and judgment thereon to be entered in favor of defendant.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to enter judgment accordingly.

Dated: September 20, 2007

                                                      s/ James K. Singleton, Jr.
                                                      JAMES K. SINGLETON, JR.
                                                      United States District Judge